### In re COLLINWOOD MOTOR SALES, Inc.

### WELLS v. UNIVERSAL CREDIT CO.

#### No. 6467.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1934.

Sidney N. Weitz, of Cleveland, Ohio (Marvin L. Gardner and John R. Keach, both of Cleveland, Ohio, on the brief), for appellant.

M. E. Evans, of Cleveland, Ohio (Evans, Whitney & Zuck, of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

The Universal Credit Company, a corporation engaged in financing purchases of automobiles by retail dealers from the manufacturer, filed a petition for reclamation of an automobile in the possession of the bankrupt, which was a dealer in motorcars at the time of the filing of the involuntary petition in bankruptcy. The facts are not in dispute. The Ford Motor Company sold to the Credit Company an automobile, executing a bill of sale therefor. The bankrupt executed and delivered to the Credit Company a trust receipt, together with a promissory note for the amount shown upon an accompanying paper called the "Dealer's Record of Purchase and Release." The trust receipt was duly filed for record with the recorder of Cuyahoga County, Ohio. All of these papers except the dealer's record of purchase were originally printed on one sheet, and were contemporaneously executed. The car was delivered to the bankrupt and at all times after the sale, and with the knowledge of the credit company, was displayed in the bankrupt's place of business. At the time of the adjudication in bankruptcy the promissory note was due and unpaid.

The Referee in Bankruptcy dismissed the petition for reclamation. Upon petition to review the order of dismissal, the District Court reversed the order of the Referee and sustained the petition for review.

The controversy arises over the effect of the trust receipt, which in substance, recited that the bankrupt had received the motor vehicle of the credit company for storage, to be returned to the Credit Company or its owner upon demand. The trust receipt contained a clause acknowledging that the motor vehicle was the property of the Credit Company, and also the following:

"I (we) hereby agree not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of any of said motor vehicles to any other

person until after payment of corresponding amount shown on Dealer's Record of Purchase and Release of like identification number herewith."

Under this contract the bankrupt had possession of the car with power to purchase. Upon payment of the amount due, its interest would have ripened into title, and then, and then only, could it sell the car.

■ While in the various state jurisdictions the transaction covered by the so-called trust receipt is regarded sometimes as a chattel mortgage, sometimes as a bailment, and sometimes as a conditional sale (notes, 25 A. L. R. 332, 49 A. L. R. 282, 309), the nature of this particular contract and its effect as against the Trustee in Bankruptcy are to be determined exclusively by the local law of the State of Ohio. York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 S. Ct. 481, 50 L. Ed. 782; Bryant, Trustee, v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 29 S. Ct. 614, 53 L. Ed. 997; Central Acceptance Corp. v. Lynch, 58 F.(2d) 915 (C. C. A. 6).

■ No sale by the bankrupt is involved. The sole question is whether the trust receipt gives the Credit Company a lien upon the automobile superior to the rights of the Trustee, who stands in the same position as an execution creditor of the bankrupt. Bankruptcy Act of 1898 (section 47 (a) (2), as amended June 25, 1910, title 11 U. S. C. § 75 (a) (2), 11 USCA § 75 (a) (2); In re Bettman-Johnson Company, 250 F. 657 (C. C. A. 6); Yates-American Machine Co. v. Jury, Trustee, 56 F.(2d) 831 (C. C. A. 3).

We think that this transaction established a valid lien (1) because of the decisions of the Supreme Court of Ohio relating to conditional sales; (2) because of the terms of the recording act; and (3) because of the decisions of this court applicable to contracts of this nature executed in Ohio.

Apart from statute, the validity of conditional sales agreements even as against innocent purchasers has long been recognized in the State of Ohio. Sage v. Sleutz, 23 Ohio St. 1; Sanders v. Keber & Miller, 28 Ohio St. 630; Call v. Seymour, 40 Ohio St. 670; Case Manufacturing Co. v. Garven, 45 Ohio St. 289, 13 N. E. 493.

So far as it concerns the instant case, the original conditional sales recording statute (82 Ohio Laws, 238, effective July 1, 1885) was intended to protect creditors, subsequent purchasers, and mortgagees in good faith, by requiring that conditional sales contracts be written and recorded. Neither the original statute nor the later enactments affect the validity of duly recorded contracts covered by such statutes (98 Ohio Laws, 115; 111 Ohio Laws, 116).

Moreover, that part of the statute (section 8568 of the General Code of Ohio) which governs here, is broad in scope.[1] It covers various transactions involving the delivery of personal property with retention of security title in the deliverer, including not only strict contracts of conditional sale, but also contracts in the nature of conditional sale. In re Bettman-Johnson Company, supra.

The proviso at the close of the first paragraph of section 8568, printed in the margin, states that neither the foregoing provisions of the section nor the provisions of sections 8560 and 8561 of the General Code of Ohio shall be construed to apply to or to require the deposit, filing, or other record whatsoever of trust receipts or similar instruments, under certain circumstances which have no ap-

[1] Section 8568, General Code of Ohio: "When personal property is sold to a person to be paid for in whole or in part in installments, or is leased, rented, hired or delivered to another on condition that it will belong to the person purchasing, leasing, renting, hiring, or receiving it, when the amount paid is a certain sum, or the value of the property, the title to it to remain in the vendor, lessor, renter, hirer or deliverer thereof, until such sum or the value of the property or any part thereof has been paid, such condition, in regard to the title so remaining until payment, shall be void as to all subsequent purchasers and mortgagees in good faith and for value, and creditors unless the conditions are evidenced by writing, signed by the purchaser, lessee, renter, hirer or receiver thereof, and also a statement thereon, under oath, made by the person so selling, leasing or delivering the property, his agent or attorney, of the amount of the claim, or a true copy thereof, with an affidavit that it is a copy, be deposited with the county recorder of the county where the person signing the instrument resides at the time of its execution, if a resident of the state, and if not such resident, then with the county recorder of the county in which the property is situated at the time of the execution of the instrument; provided, however, that neither the foregoing provisions of this section, nor the provisions of sections 8560 and 8561 of the General Code of Ohio shall be construed to apply to, or to require the deposit, filing or other record whatsoever of, trust receipts or similar instruments executed and delivered by any person, firm or corporation. * * * *"

plication here. However, the fact that the proviso makes this exception as to "trust receipts or similar instruments" shows that the Legislature considered that trust receipts might be in the nature either of conditional sales or of chattel mortgages.

The present contract comes within the terms of section 8568, but it is not a chattel mortgage. Title had been conveyed to the Credit Company by the Ford Motor Company, and was by the trust receipt retained in the Credit Company. Obviously a chattel mortgage could not be given to the owner of the chattel. There was no pledge, for the possession of the car remained in the bankrupt. The transaction presents the features of a conditional sale as set forth in Sage v. Sleutz, supra, and In re Bettman-Johnson Company, supra. In the latter case, at page 663 of 250 F., the court said:

"\* \* \* if the transaction under consideration does not disclose all of the elements of a conditional sale, it is at least so far in the nature of a conditional sale as to fall within the terms of the Ohio statute."

The decisions of In re Bettman-Johnson Company and Central Acceptance Corp. v. Lynch, supra, rule upon the validity of trust receipts not recorded. However, those cases apply the Ohio conditional sales statute to trust receipts.

Hence we conclude that within the State of Ohio the trust receipt above described is in the nature of a conditional sale contract. By proper record, notice of the lien was given to all third parties. Since it is not claimed that the transaction operates as a preference under section 60 of the Bankruptcy Act (Title 11 U. S. C. § 96 [11 USCA § 96]), it complies with the tests set forth in Central Acceptance Corp. v. Lynch, supra.

The District Court in its memorandum on petition to review found that there was no evidence that the transactions were not conducted in good faith and in accordance with the terms of the receipt. Nevertheless the trustee contends that since the various documents were executed contemporaneously as a part of one transaction, and the automobile was placed in the bankrupt's salesroom for the purpose of sale, with the knowledge of the Credit Company, the Credit Company waived its lien.

This contention is not supported by the record. There is no evidence whatever that there was any course of dealing between the Credit Company and the bankrupt in which the Credit Company failed to enforce any provision of the trust receipt. No sale of the automobile was made or attempted. While the contemplated resale was to some extent inconsistent with reservation of title in the Credit Company, considering the contract as an entirety, and particularly the prohibition against sale or disposition until payment had been made, it is plain that the reservation of title by the Credit Company was the dominant purpose of the instrument, and that as a whole the contract was entirely consistent with ownership in the Credit Company.

In Francisco v. Ryan, 54 Ohio St. 307, 43 N. E. 1045, 56 Am. St. Rep. 711, the chattel mortgage contained no such prohibition against sale.

Since under Ohio law such contracts are valid when recorded, since no preference is claimed and no fraud is shown, there is no reason in logic or equity why the Credit Company should not have the security for which it contracted.

The judgment of the District Court is affirmed.